1

2

3

4

5

6

7                  IN THE UNITED STATES DISTRICT COURT

8                    FOR THE DISTRICT OF OREGON

9

10  COLUMBIA RIVERKEEPER and        )
    WILLAMETTE RIVERKEEPER,         )
11  Oregon nonprofit                )
    corporations,                   )   No.  08-936-HU
12                                   )
                   Plaintiffs,       )
13                                   )
         v.                          )   OPINION AND
14                                   )
    FEDERAL ENERGY REGULATORY        )        ORDER
15  COMMISSION, an agency of the     )
    United States,                   )
16                                   )
                   Defendant.        )
17  ─────────────────────────────────)

18  Brett Vandenheuvel
    Brent Foster
19  724 Oak Street
    Portland, Oregon 97031
20
    Brenna Bell
21  1515 SE Water Avenue # 102
    Portland, Oregon 97202
22       Attorneys for plaintiffs

23  Karin Immergut
    United States Attorney
24  District of Oregon
    Kevin Danielson
25  Assistant United States Attorney
    1000 S.W. Third Avenue, Suite 600
26  Portland, Oregon 97202
         Attorneys for defendant
27

28  OPINION AND ORDER Page 1

HUBEL, Magistrate Judge:

Environmental groups Columbia Riverkeeper ("CRK") and Willamette Riverkeeper ("WRK") bring this action against the Federal Energy Regulatory Commission ("FERC"), requesting declaratory relief under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, and the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.* CRK and WRK seek to obtain mailing lists showing the names and addresses of landowners notified of four public scoping hearings about a proposed 220-mile natural gas pipeline. FERC has provided plaintiffs with mailing lists from which the names and addresses of private individuals have been redacted. Plaintiffs and FERC have filed cross motions for summary judgment.

## Factual Background

On October 29, 2007, FERC released a Notice of Intent to Prepare an Environmental Impact Statement for the Palomar Gas Transmission Project and Notice of Public Meetings ("Notice" or "October 29, 2007 Notice"). VandenHeuvel Declaration, Exhibit 6.

The Notice described the project, informed landowners adjacent to the pipeline that public hearings would be held, provided information about the administrative process, and solicited comments. The Notice also stated that Palomar Gas Transmission LLC ("Palomar") would contact landowners to negotiate property rights, but warned that if the "negotiations fail to produce an agreement, the pipeline company could initiate condemnation proceedings. ..." Id. The Notice stated that it was being sent to "federal, state,

OPINION AND ORDER Page 2

and local government agencies; elected officials; affected landowners; environmental and public interest groups; Indian tribes and regional Native American organizations; commentators and other interested parties; and local libraries and newspapers." Id.

FERC held four public hearings (also referred to as scoping hearings) between October and December 2007. FERC admits in its pleadings that at a meeting on November 13, 2007, FERC representative Doug Sipe referred to a list of notice recipients as the "landowner list." Other comments by Sipe at the hearing indicated that FERC had a mailing list that was extensive and had been revised numerous times:

> Issuance of the notice of intent opened the formal comment period. It is during this period that we have accepted written comments on the project. The mailing list is very large and it's a constant revision, so if anybody in the room tonight did not receive a notice of intent I apologize. The landowner list is a constant battle for all of us involved and it keeps changing. I mean, to this day I sent out final environmental impact statements. You'd think the addresses would be right by then. We still get a bunch of returns.

Plaintiffs' Response to Defendants' Motion for Protective Order, Exhibit 10 (transcript of public scoping meeting held November 13, 2007), p. 7.

Plaintiffs assert that FERC has not sent the Notice to many of the landowners who are on the pipeline route, thereby failing to advise these landowners about the scope of the project, the landowners' legal rights, Palomar's right to exercise eminent domain over their property, upcoming meetings, and deadlines for comment and appeals.

///

OPINION AND ORDER Page 3

1   Paul Sansone has submitted a declaration stating that he
2   attended a meeting arranged by Sen. Wyden's office, on January 28,
3   2008, with FERC Commissioner John Wellinghoff and FERC staff.
4   VandenHeuvel Declaration, Exhibit 15 (Second Declaration of Paul
5   Sansone). Sansone states that also in attendance were Sen. Wyden's
6   staff, Gov. Kulongoski's Natural Resources Policy Director, a
7   Clackamas County Commissioner, and landowners. Id. Sansone states
8   that the landowners provided "multiple detailed examples" of lack
9   of notice, and that Commissioner Wellinghoff apologized for that.
10  Id.

11  Paul Dryden, a landowner on the Palomar pipeline route, states
12  in a declaration that he had been approached by companies seeking
13  right of entry to his farm, and had told them it would be refused.
14  Id. at Exhibit 14 (Declaration of Paul Dryden). FERC did not notify
15  him of an August 5, 2008 scoping meeting in Molalla. He states that
16  it was only through CRK that he learned of the meeting, where it
17  was revealed that the pipeline would pass through his property. Id.
18  Dryden wrote a letter to FERC on August 13, 2008, protesting the
19  lack of notification to him. Id. (copy of letter attached to
20  declaration).

21  On February 12, 2008, plaintiffs submitted a FOIA request for
22  all mailing lists FERC used to invite the public to the Palomar
23  scoping meetings between October and December 2007, and all mailing
24  lists compiled at scoping meetings in November and December 2007.
25  (FOIA Request #1). VandenHeuvel Declaration Exhibit 1.
26  ///

27

28  OPINION AND ORDER Page 4

On March 12, 2008, plaintiffs received a response from FERC stating that a search of its files found "no responsive documents to your request." Id. at Exhibit 3. On April 22, 2008, plaintiffs appealed FERC's denial of the FOIA request. By letter dated June 11, 2008, FERC rejected the appeal, stating that a "thorough review" of procedures and processes had been made; that the Director commenced a "thorough, good faith search for responsive documents by asking appropriate staff members to check the non-public file for anything that could possibly be construed as responsive to" plaintiffs' requests; and that no responsive documents had been found. Id. at Exhibit 4.

Veronica Moten, FERC's administrative officer responsible for responding to FOIA requests for the past five years, testified at her deposition that she responds to about 100 FOIA requests per year. Testimony of Veronica Moten, Plaintiffs' Memorandum in Support of Motion for Summary Judgment, Exhibit 9 (Moten dep.) 9:11-17, 23-25. Ms. Moten testified that she spent "probably a couple of hours" responding to plaintiffs' FOIA request, id. at 11:12-13, and that the only place she searched was FERC's electronic library database system, which is already available to the public. Id. 13:2-10. She acknowledged that she did not search any e-mails or paper files, and did not ask Sipe or any other FERC employee about the request at the time of the search. Id. at 13:17-25. At the time of the search, she did not ask the project manager whether there was a mailing list. Id. at 17:5-25.

///

OPINION AND ORDER Page 5

With the June 11, 2008 letter reiterating that a review of procedures and a thorough search of the non-public file had turned up nothing that could possibly be responsive to plaintiffs' request, FERC attached a landowner list that had been given to FERC by Palomar on April 18, 2008, but with the names and addresses of individuals blacked out (the Palomar landowner list). Plaintiffs' Exhibit 4. FERC did not indicate whether the Palomar landowner list was the same list FERC had used to mail the Notice. Id. Doug Sipe has given conflicting testimony on whether the Palomar landowner list is responsive to plaintiffs' FOIA request #1, which requested mailing lists from October to December of 2007, not April 2008. See deposition of Doug Sipe, VandenHeuvel Declaration Exhibit 8, at 36:9-11 ("Q: Is it correct that the October 2007 list is different from the April 2008 list? A: Yes. That's why they call it an updated mailing list.") and Declaration of Doug Sipe ¶ 5 ("It is my belief that the April 18, 2008 list contains all the names included in the list staff used to mail the October 29, 2007 [Notice].")

On June 17, 2008, plaintiffs sent a FOIA request to FERC for an unredacted version of the Palomar landowner list (FOIA request #2). VandenHeuvel Declaration Exhibit 20. In response, FERC provided the same redacted Palomar landowners list. Watson Declaration ¶ 6; VandenHeuvel Declaration Exhibit 22.

On July 15, 2008, plaintiffs appealed FERC's decision to release the landowners list in redacted form. FERC responded to the appeal by letter dated August 25, 2008, affirming its decision to withhold the names and addresses of individual landowners and

OPINION AND ORDER Page 6

1  citing Exemption Six to FOIA, 5 U.S.C. § 552(b)(6). Watson
2  Declaration ¶ 7. However, on September 22, 2008, Douglas Sipe sent
3  an email to Michael Watson, FERC's counsel, enclosing the initial
4  mailing list for the Notice (presumably the one sent out on October
5  29, 2007). Id. at Exhibit 10.

6      On February 10, 2009, pursuant to discovery requests, FERC's
7  counsel, Kevin Danielson, sent an email to plaintiffs' counsel with
8  redacted versions of FERC's mailing lists of October 3, 2007 and
9  October 17, 2007. Id. at Exhibit 5; Danielson Declaration, Exhibit
10 1. On February 12, 2009, FERC submitted to plaintiffs a redacted
11 version of the October 28, 2007 mailing list. Id.

12                           **Standards**
13     FOIA's purpose is to "pierce the veil of administrative
14 secrecy and ... open agency action to the light of public
15 scrutiny." Dept. of Air Force v. Rose, 425 U.S. 352, 361
16 (1976)(internal quotation marks and citation omitted). Thus, FOIA
17 "mandates a policy of broad disclosure of government documents."
18 Maricopa Audubon Society v. U.S. Forest Service, 108 F.3d 1082,
19 1085 (9th Cir. 1997). When a FOIA request is made, an agency may
20 withhold a document, or portions of a document, only if the
21 material falls within one of the nine statutory exemptions found in
22 § 552(b). See Kamman v. IRS, 56 F.3d 46, 48 (9th Cir. 1995). These
23 exemptions are "explicitly exclusive," Dept of Justice v. Tax
24 Analysts, 492 U.S. 136, 151 (1989) and must be narrowly construed
25 "in light of FOIA's dominant objective of disclosure, not secrecy."
26 Rose, 425 U.S. at 361. FOIA imposes on agencies the burden of
27
28 OPINION AND ORDER Page 7

1  sustaining their actions and proving that withheld materials are
2  exempt from disclosure. 5 U.S.C. § 552(a)(4)(B); <u>John Doe Agency v.</u>
3  <u>John Doe Corp.</u>, 493 U.S. 146, 152 (1989); <u>Lion Raisins v. U.S.</u>
4  <u>Dept. of Agriculture</u>, 354 F.3d 1072, 1079 (9th Cir. 2004).

5       Exemption Six of FOIA prohibits disclosure of "personnel and
6  medical files and similar files the disclosure of which would
7  constitute a clearly unwarranted invasion of personal privacy." 5
8  U.S.C. § 552(b)(6). Under Exemption Six, the term "similar files"
9  has been construed broadly, <u>U.S. Dep't. of State v. Wash. Post Co.</u>,
10  456 U.S. 595, 600 (1982), to apply to government documents
11  containing information about particular individuals. <u>Forest Service</u>
12  <u>Employees for Environmental Ethics v. U.S. Forest Service</u>, 524 F.3d
13  1021, 1024 (9th Cir. 2008).  If documents meet the "similar files"
14  requirement, the court must next consider whether the disclosure of
15  the documents would constitute a "clearly unwarranted" invasion of
16  their personal privacy. 5 U.S.C. § 552(b)(6). In conducting the
17  inquiry, the court balances the public interest in disclosure
18  against the interest Congress intended the exemption to protect.
19  <u>Id.</u>; <u>U.S. Dept. of Justice v. Reporters Committee for Freedom of</u>
20  <u>the Press</u>, 489 U.S. 749, 776 (1989); <u>United States Dept. of Defense</u>
21  <u>v. Federal Labor Relations Authority</u>, 510 U.S. 487, 489 (1994).

22       The only relevant public interest is the extent to which
23  disclosure would contribute to the public's understanding of the
24  activities and operations of the government. <u>Federal Labor</u>
25  <u>Relations Authority</u>, 510 U.S. at 495. Public interest is
26  substantial when the information in the documents "sheds light on
27
28  OPINION AND ORDER Page 8

an agency's performance of its statutory duties." <u>Id.</u> at 495-96. FOIA's purpose is not "fostered by disclosure of information about private citizens ... that reveals little or nothing about an agency's own conduct." <u>Id.</u> at 496.

FOIA cases are typically decided on summary judgment. <u>Lane v. Dept. of Interior</u>, 523 F.3d 1128, 1134 (9th Cir. 1997).

**Discussion**

Plaintiffs move for summary judgment in their favor on both FOIA requests. For FOIA request #1, they seek a declaration that FERC violated FOIA and the APA by failing to conduct an adequate search and withholding responsive documents, and that the court order the production of documents responsive to FOIA request #1. (First Claim for Relief). For FOIA request #2, plaintiffs ask the court to declare that FERC violated FOIA by improperly using Exemption Six to redact the April 18, 2008 mailing list, and order FERC to produce unredacted documents responsive to FOIA request #2 (Third Claim for Relief).[1] FERC moves for summary judgment in its favor on Exemption Six.

///

---

[1] Plaintiffs asserted a Second Claim for Relief in their complaint, which was based on FOIA request #1 and alleged that if FERC did not have the documents requested, its action of losing or destroying the requested documents between the time the list or lists were used and the time plaintiffs requested them was "arbitrary and capricious and in violation of the law." Complaint ¶ 23. The allegation does not specify whether the claim is asserted under FOIA or the APA or both. There is no evidence before the court that the documents requested pursuant to FOIA request #1 were lost or destroyed. That claim is therefore dismissed.

OPINION AND ORDER Page 9

1      FERC asserts as a threshold matter that the APA does not apply
2  to this case because FOIA provides an adequate remedy. FERC is
3  correct. The APA does not provide an independent basis for subject
4  matter jurisdiction in the district courts. <u>Tucson Airport</u>
5  <u>Authority v. General Dynamics Corp.</u>, 136 F.3d 641, 645 (9th Cir.
6  1988, citing <u>Califano v. Sanders</u>, 430 U.S. 99, 105 (1977). The
7  APA's waiver of sovereign immunity does not apply unless an
8  adequate remedy is unavailable elsewhere. <u>Id.</u> See also <u>San Diego</u>
9  <u>Navy Broadway Complex Coalition v. United States Dep't. of the</u>
10 <u>Navy</u>, 2008 WL 110900 (S.D. Cal. 2008)(same). The relief plaintiffs
11 seek is available under FOIA, which requires federal entities to
12 make requested documents "promptly available to any person," 5
13 U.S.C. § 552(a)(3)(A), unless it falls within one of the
14 exemptions.

15     To the extent that plaintiffs' claims are asserted under the
16 APA, they are dismissed for lack of subject matter jurisdiction.

17     FERC concedes that it failed to conduct an adequate search for
18 the documents requested in FOIA request #1. However, FERC has not
19 addressed the other component of plaintiffs' motion for summary
20 judgment, which is FERC's failure to produce documents responsive
21 to FOIA request #1. FERC is ordered to make an adequate search and
22 to produce all documents responsive to plaintiffs' FOIA request #1.

23     Plaintiffs have urged the court to find that FERC's failure to
24 produce documents responsive to FOIA request #1 was arbitrary and
25 capricious. 5 U.S.C. § 552 (a)(4)(F). Although FERC's response to
26 plaintiffs' FOIA request #1 was, at best, a very poor job, I am
27
28 OPINION AND ORDER Page 10

1    unpersuaded that the record supports a finding that FERC acted
2    arbitrarily and capriciously.
3        The remaining issue is whether, under the balancing test for
4    personal privacy and public interest, the redacted mailing lists
5    are proper pursuant to Exemption Six of FOIA.
6        A.    Privacy interest
7        Plaintiffs assert that FERC's disclosure of the landowners'
8    names and addresses will have minimal impact on their personal
9    privacy because 1) FERC routinely releases landowner lists for
10   similar pipelines; 2) the mailing list does not reveal any private
11   information; 3) FERC provides the landowner lists to private
12   corporations; and 4) there is little risk of harm or embarrassment
13   to the landowners.
14            1.    Does FERC routinely release similar lists?
15       Plaintiffs contend that FERC "routinely" publishes on its
16   website the names and addresses for all landowners along pipeline
17   routes other than the Palomar route. They offer as examples three
18   other prominent pipelines proposed for Oregon: Ruby, NorthernStar
19   and Oregon LNG. For each, the FERC website contains unredacted
20   lists of names and addresses of landowners on the pipeline route.
21   See VandenHeuvel Declaration Exhibit 16 (excerpt of names and
22   addresses of landowners affected by the Ruby Pipeline), Exhibit 17
23   (excerpt of names and addresses of landowners affected by the
24   NorthernStar Pipeline), Exhibit 18 (excerpt of names and addresses
25   of landowners affected by the Oregon LNG pipeline). Plaintiffs
26   dismiss FERC's contention that individuals on the Palomar landowner
27
28   OPINION AND ORDER Page 11

1   list have a strong privacy interest, on the ground that it is

2   contradicted by FERC's regular practice of publishing similar lists

3   on its website, and FERC's failure to articulate any reason why

4   landowners for the Palomar pipeline have a stronger privacy

5   interest than landowners on the unredacted pipeline lists published

6   on FERC's website. Plaintiffs point out that FERC has also failed

7   to provide any evidence that landowners along the Ruby,

8   NorthernStar and Oregon LNG pipelines, whose names and addresses

9   have been made public, have suffered any harm.

10      FERC counters that it has a "policy and practice" of not

11  intentionally disclosing the names and addresses of private

12  citizens involved with pipeline projects, based on FOIA Exemption

13  Six. In support of this statement, FERC submits the Declaration of

14  Jacqueline Holmes. But Holmes's declaration does not suggest that

15  FERC had such a "policy and practice" when plaintiffs made their

16  FOIA request, or even that it currently does. Moreover, her

17  declaration says that FERC has relied on "private entities" to

18  determine whether landowner lists containing private information

19  about individuals should be public or not. She states as follows:

20      Many landowner lists are submitted as "privileged" or
        "non-public" by applicants (private entities) in order to
21      protect the privacy interests of individual landowners

22      The lists are frequently requested through the [FOIA],
        and the Commission has consistently withheld the names
23      and addresses of private citizens pursuant to FOIA
        Exemption 6. 5 U.S.C. § 552(b)(6)(2000 & Supp. IV 2004).
24
        It has now been brought to the Commission's attention
25      that a number of lists have been filed by some applicants
        as "public." See Plaintiff's Memorandum in Support of
26      Motion for Summary Judgment and Response to Defendant's
        Motion for Summary Judgment, p. 20. When a document is
27

28  OPINION AND ORDER Page 12

> filed by an applicant with the Commission as "public," it is automatically placed in the Commission's public files. <u>The Commission must rely on the entity submitting the information to properly label information not appropriate for public review.</u>

Holmes Declaration ¶¶ 2, 3 (emphasis added). Holmes goes on to say in her declaration that FERC is now taking steps to redesignate as private the landowner lists previously filed by applicants as public, and inform applicants "that any documents that include privacy information such as the names and personal addresses of individual landowners must be filed with the Commission as 'non-public' or 'privileged.'" <u>Id.</u> at ¶ 4.

FERC argues that its "inadvertent" release of the names and addresses of individuals affected by other FERC projects does not eliminate or reduce the privacy interest of individuals in this case. But the Holmes Declaration does not suggest that the release of the names and addresses of individuals involved in other FERC projects was "inadvertent," and more importantly, does not demonstrate that FERC had a policy of withholding names and addresses at the time of plaintiffs' original FOIA request, or even at present.

FERC has failed to provide any evidence of a reason for treating the Palomar landowner list differently from the Ruby, NorthernStar and Oregon LNG landowner lists.

2.    <u>Does the mailing list implicate personal privacy</u>?

The mere disclosure of a list of names and other identifying information is not "inherently and always a significant threat to the privacy of the individuals on the list." <u>United States Dept. of</u>

OPINION AND ORDER Page 13

1  State v. Ray, 502 U.S. 164, 177 n. 12 (1991). Whether disclosure of
2  a list of names is a significant or a minimal threat to privacy
3  depends upon the "characteristics revealed by virtue of being on
4  the particular list, and the consequences likely to ensue." Id.
5  (internal quotations and citation omitted).

6      Plaintiffs assert that the Palomar landowner list does not
7  reveal private information because it does not reveal anything
8  personal about the individuals on the list. Plaintiffs contrast
9  this case with Multnomah County Medical Soc. v. Scott, 825 F.2d
10 1410 (9th Cir. 1987), where the court held that a list of all
11 Medicare recipients in Multnomah County implicated a significant
12 privacy interest because the "beneficiaries' identities would
13 reveal either that they are senior citizens or disabled." 825 F.2d
14 at 1415.

15     FERC asserts that names and addresses are private information,
16 citing Bibles v. Oregon Natural Desert Ass'n, 510 U.S. 355, 356
17 (1997)(environmental group not entitled to mailing list for
18 newsletter sent by BLM) and Federal Labor Relations Authority, 510
19 U.S. at 489, 502 (labor union not entitled to documents disclosing
20 home addresses of federal civil service employees not members of
21 the union).

22     Plaintiffs distinguish Federal Labor Relations Authority on
23 the ground that the individuals on the Palomar landowner list did
24 not make a personal choice to have the pipeline constructed on
25 their property, so that the landowner lists do not reveal any
26 information about the landowners' actions or decisions. Plaintiffs
27
28 OPINION AND ORDER Page 14

contrast the Court's comment in <u>Federal Relations Authority</u>:

> Here, for the most part, the unions seek to obtain the addresses of nonunion employees who have decided not to reveal their addresses to their exclusive representative. Perhaps some of these individuals have failed to join the union that represents them due to lack of familiarity with the union or its services. Others may be opposed to their union or to unionism in general on practical or ideological grounds. Whatever the reason that these employees have chosen not to become members of the union or to provide the union with their addresses, however, it is clear that they have *some* nontrivial privacy interest in nondisclosure, and in avoiding the influx of union-related mail, and, perhaps, union-related telephone calls or visits, that would follow disclosure.

510 U.S. at 500-501.

I note further that the holding of <u>Federal Labor Relations Authority</u> rested in large part, not on the substantiality of the privacy interest at stake, but rather on the Court's finding that the public interest served by disclosure was negligible because disclosure would "reveal little or nothing about the employing agencies or their activities." 510 U.S. at 498.

> Against the virtually nonexistent FOIA-related public interest in disclosure, we weigh the interest of bargaining unit employees in nondisclosure of their home addresses. [Citation omitted] Because a very slight privacy interest would suffice to outweigh the relevant public interest, ... [i]t is enough for present purposes to observe that the employees' interest in nondisclosure is not insubstantial.

510 U.S. at 501. The <u>Federal Labor Relations Authority</u> case was not similar to the situation in this case, either in the privacy interest or in the public interest in disclosure.

Similarly, the Supreme Court's <u>Bibles</u> decision addressed only the public interest inquiry, not the privacy interest involved. The Ninth Circuit's decision, <u>Oregon Natural Desert Ass'n v. Bibles</u>, 83

OPINION AND ORDER Page 15

F.3d 1168 (9th Cir. 1996), *rev'd on other grounds,* 519 U.S. 355 (1997), is more like this case with respect to the privacy interest. The Ninth Circuit affirmed Judge Marsh's order to the BLM that it disclose a mailing list used to send out a BLM newsletter, and the Supreme Court did not reverse the Ninth Circuit on the privacy interest issue.

The Ninth Circuit concluded that disclosure of the list would not constitute a "clearly unwarranted invasion of personal privacy," under 5 U.S.C. § 552(b)(6), because the majority of the individuals had asked to be placed on the BLM mailing list, in order to receive mailings about BLM activities. In light of the mailings already received by the individuals and the similar subject matter of the mailings from ONDA and the BLM, the court found the privacy interest to be "minimal." 83 F.3d at 1171. The Ninth Circuit's analysis, based on the volitional nature of the individuals' presence on the BLM mailing list and their interest in receiving mailings on high desert issues is consistent with <u>Federal Labor Relations Authority</u>'s holding that the privacy interest turns on whether the names and addresses themselves reveal private decisions of those individuals, and reflect a desire to be contacted or not to be contacted. Here, the list is of landowners in the path of a possible pipeline. The landowners took no action to get either on or off this list. Their presence on the list was involuntary. I conclude that neither <u>Federal Labor Relations Authority</u> nor the two <u>Bibles</u> decisions supports FERC's position.

> 3. <u>Has FERC provided the mailing lists to private corporations</u>?

OPINION AND ORDER Page 16

Plaintiffs assert that FERC has already shared the Palomar landowner list with a private corporation, Palomar, and that Palomar has used the list to send numerous communications. VandenHeuvel Declaration Exhibit 8 (Deposition of Doug Sipe) 21:4-25. They argue that when both the government and a private corporation are already contacting some or all of the names on the list, regardless of whether the landowner wishes or does not wish to be contacted, the privacy interest of the individuals is greatly reduced. FERC has not addressed this argument.

4. <u>Does disclosure risk harm or embarrassment to landowners</u>?

Plaintiffs argue that there are "very low personal consequences" for Palomar landowners whose names and addresses are disclosed to plaintiffs, because plaintiffs seek the information only for the purpose of ensuring that the landowners are receiving legally mandated notices from FERC.[2] They point out that FERC has not identified any harm to the landowners resulting from disclosure, such as the unwanted union contacts in <u>Federal Labor Relations Authority</u> or possible embarrassment and retaliation, as in <u>Ray</u>. *See also* <u>Forest Service Employees</u>, 524 F.3d at 1026 (avoidance of harassment is cognizable privacy interest under Exemption Six), *citing* <u>Painting Indus. of Haw. Mkt. Recovery Fund v. Dep't. of Air Force</u>, 26 F.3d 1479, 1483 (9th Cir. 1994) and

_____

[2] Although the reasons the documents are sought under the FOIA are irrelevant to the balancing test. <u>Forest Service Employees</u>, 524 F.3d at 1025, *citing* <u>Federal Labor Relations Authority</u>, 510 U.S. at 496 ("[W]hether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made.")(emphasis in original)

OPINION AND ORDER Page 17

1  Minnis v. U.S. Dep't. of Agric., 737 F.2d 784, 787 (9th Cir. 1984).

2       FERC has not responded to this argument.

3       B.   Public interest

4       As noted, the only relevant public interest under Exemption

5  Six is the extent to which the information sought would shed light

6  on an agency's performance of its statutory duties or otherwise let

7  citizens know what their government is up to. Federal Labor

8  Relations Authority, 510 U.S. at 497, quoting U.S. Dep't. of

9  Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 773

10 (1989)(internal quotation marks omitted).

11      Plaintiffs assert that the public interest is substantial

12 because plaintiffs seek to assess whether FERC was complying with

13 its obligation to provide notice to all those entitled to notice

14 under NEPA and FERC regulations. They argue that a crucial

15 component of NEPA is ensuring that environmental information is

16 made available to government decisionmakers and the interested

17 public before governmental action is taken, and to that end,

18 federal agencies are specifically directed to encourage and

19 facilitate public involvement in decisions which affect the quality

20 of the human environment. 40 C.F.R. §§ 1500.1(b), 1500.2(d).

21 Plaintiffs point out FERC's regulations require compliance with

22 NEPA's requirement of public involvement. 18 C.F.R. § 380.9.

23      Plaintiffs contend that despite this mandate, FERC's

24 notification to landowners that their property was subject to

25 condemnation under eminent domain did not reach many of those

26 landowners. Plaintiffs cite the Sansone and Dryden declarations,

27

28 OPINION AND ORDER Page 18

discussed above.

Plaintiffs contend that disclosure of the mailing lists will shed light on FERC's performance of its duties, because disclosure enables the public to review whether FERC complied with its public notice mandate, to oversee FERC's procedures, and to ensure that all affected landowners are on the mailing list. They argue, "whether FERC provided adequate notice to all of the affected landowners is an ongoing question," that can only be answered by public disclosure of the mailing list.

FERC conceded at oral argument that disclosure of the mailing list would shed light on FERC's activities, but argues that that disclosure would not "contribute to the understanding of how FERC compiles its mailing list," and argues that just because FERC might have missed some of the affected landowners on the list "does not mean it was not trying to do its job." Defendant's Reply, p. 7. FERC asserts that revealing the names and addresses would not contribute to the public's understanding of how well FERC was doing its job "unless someone double-checked the owner of each piece of property next to the path of the proposed pipeline and compared it to FERC's list." Id. At oral argument, plaintiffs acknowledged that this was their intention.

### Conclusion

FERC has not carried its burden of proving the withheld materials are exempt from disclosure. The evidence does not support the existence of a "clearly unwarranted invasion of privacy" as that statutory term is interpreted in Supreme Court and Ninth

OPINION AND ORDER Page 19

1  Circuit jurisprudence. Nor has FERC carried its burden of proving
2  that the information sought by plaintiffs would not shed light on
3  FERC's performance of its statutory duties governing notice.

4      Plaintiffs' motion for summary judgment (doc. # 37) is GRANTED
5  in part and DENIED in part. FERC is ordered to search for and to
6  produce the documents requested in plaintiffs' FOIA requests #1 and
7  #2, with names and addresses. To the extent that plaintiffs' claims
8  are based on the APA, they are dismissed for lack of subject matter
9  jurisdiction. Plaintiffs' request that the court find FERC's
10 actions arbitrary and capricious is denied. Plaintiffs' second
11 claim for relief is dismissed.

12     FERC's motion for summary judgment on Exemption Six (doc. #
13 27) is DENIED.

14     IT IS SO ORDERED.

15

16     Dated this __24th____ day of ___July____, 2009.

17                                  /s/ Dennis J. Hubel

18 _____

19                              Dennis James Hubel
                               United States Magistrate Judge
20

21

22

23

24

25

26

27

28 OPINION AND ORDER Page 20